UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                  )
ANTHONY MAZZA,                    )
                                  )
            Plaintiff,            )
                                  ) Civil Action No. 11-719 (EGS)
            v.                    )
                                  )
VERIZON WASHINGTON DC, INC.,      )
*et al.*,                         )
                                  )
            Defendants.           )
_____)

### MEMORANDUM OPINION

Plaintiff Anthony Mazza, proceeding *pro se*, brings this
case against defendants Verizon Washington D.C., Inc. ("VZDC"),
Verizon Communications, Verizon Wireless, and AFNI, Inc.
("AFNI"), alleging violations of the Fair Credit Reporting Act
("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"),
as well as two common law claims.  Pending before the Court is
defendants' Motion to Dismiss the Complaint pursuant to Rules
12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure.
Upon consideration of the Motion to Dismiss, the Opposition and
Reply thereto, the relevant case law, the entire record in this

case, and for the reasons stated below, the Court hereby **GRANTS
IN PART AND DENIES IN PART** defendants' Motion to Dismiss.[1]

I.    **BACKGROUND**

Mazza is a resident of Washington, D.C. and a former
customer of defendants Verizon Wireless and VZDC.  Compl. ¶¶ 3,
13.  Mazza had a "bundled services" plan with Verizon Wireless
and VZDC, whereby Verizon Wireless and VZDC supplied him with
home telephone, cellular phone, and residential internet
services.  Compl. ¶¶ 13-14.  Mazza alleges that he terminated
this plan on April 25, 2007.  Compl. ¶ 14.  On or about that
same date, Mazza was notified of an outstanding bill due and
owing Verizon Wireless in the amount of $1,006.57.  Compl. ¶ 17.
On May 1, 2007, Mazza caused payment to Verizon Wireless via
personal check in the amount of $1,006.57.  Compl. ¶ 18.  Mazza
alleges that Verizon Wireless cashed the personal check on May
8, 2007.  Compl. ¶ 19 (citing Ex. A).  On or about that same
date, Mazza received a bill from VZDC in the amount of

---

[1] At the end of his Opposition to the Motion to Dismiss,
Mazza includes an argument that, rather than dismiss this case,
the Court should permit Mazza to amend his Complaint, if
necessary.  *See* Pl.'s Opp'n at 23-25.  However, because he has
not filed a motion for leave to amend the Complaint, nor
attached a proposed amended pleading, pursuant to Federal Rule
of Civil Procedure 15(a)(2) and Local Civil Rule 7(i), the Court
cannot construe this argument as a proper motion for leave to
amend.  Having concluded below that Mazza can maintain certain
of his claims under the FCRA and the FDCPA, the Court finds that
it is not necessary to direct Mazza to file an amended pleading.

$1,138.45.  Compl. ¶ 20.  Mazza believed that the difference between the bill and his recent remittance ($131.88) was the result of excessive charges and contacted the Customer Service department of VZDC.  Compl. ¶ 21.  However, Mazza alleges that VZDC informed him that the $131.88 amount was for a prior bill, which had already been paid, but, according to the VZDC representative, had not yet been processed by the cancellation team, which was "a common problem."  Compl. ¶ 22.

Between July and September 2007, Mazza alleges that he responded to several VZDC inquiries—both verbally and in writing—regarding a "past due amount owed" to them.  Compl. ¶ 23.  Thereafter, between June 2008 and June 2009, Mazza received several requests—verbally and in writing—from defendant AFNI, demanding payment of $1,138.45 due their client, VZDC.  Compl. ¶ 24.  Mazza alleges that, on or about June 2010, he received from defendant AFNI a "Settlement Offer," in which AFNI offered to accept payment of "$569.23, half the current amount due" on his "account with AFNI."  Compl. ¶¶ 25-26 (citing Ex. B).  Mazza alleges that he called AFNI to ascertain what was meant by his "account with AFNI," and he was informed that a collection notice had been reported to Consumer Credit Bureaus.  Compl. ¶ 27.

According to Mazza, he made multiple inquiries of all of the defendants—both verbally and in writing—denying owing

3

monies, requesting inquiry into the amounts remitted and cashed by defendant Verizon Wireless, and demanding the reversal of negative credit reporting.  However, defendant Verizon Wireless would only confirm receipt of payment, but insisted that the credit dispute resolution was within the province of defendant Verizon Communications; defendant VZDC disputed receipt of payment and continually referred Mazza to defendant AFNI; defendant AFNI pledged on several occasions to investigate, but continued to make demands for payment; and defendant Verizon Communications continually denied culpability, and referred Mazza to customer services representatives of the other defendants.  Compl. ¶¶ 28-32.  In July 2010, Mazza called defendant Verizon Communications; after several directed connections, Mazza was informed that the billing issue was a result of his having paid Verizon Wireless, instead of VZDC. Compl. ¶ 33.  Mazza alleges that defendant Verizon Communications pledged to address the matter promptly. *Id.*  In August 2010, Mazza contacted defendant Verizon Wireless to inform it that it had "effectively converted" his payment; Verizon Wireless pledged to resolve the matter.  Compl. ¶ 34. Mazza alleges that, to date, there has been no resolution, and he has suffered economic harm due to the severity of the negative consumer credit reporting.  Compl. ¶ 35.

Mazza, proceeding *pro se*,[2] filed his Complaint in this action on April 13, 2011.  Defendants have filed a Motion to Dismiss the Complaint pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure.  That motion is now ripe for determination by the Court.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(2)

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction over each defendant.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  The plaintiff, however, cannot rest on bare allegations or conclusory statements and "must allege specific facts connecting [each] defendant with the forum."  *Second Amendment Found. v. U.S. Conference of Mayors*,

---

[2] In their reply brief, defendants state that, "[d]espite Plaintiff's *pro se* status, he is versed in the law.  Plaintiff is a graduate of New York University Law School and a member of the bars of New York, New York's Southern Federal District Court, New York's Eastern Federal District Court, and the US Supreme Court."  Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Defs.' Reply") at 1 n.1.  However, defendants offer no support for this assertion, and there is no indication of Mazza's legal training in the record of this case.  A simple internet search reveals several individuals by the name of Anthony Mazza located in the Washington, D.C. metro area.  Therefore, the Court will not credit this unsubstantiated assertion and will afford Mazza the full leniency due a *pro se* litigant.

274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation omitted).
"To make such a showing, the plaintiff is not required to adduce
evidence that meets the standards of admissibility reserved for
summary judgment and trial; rather [he] may rest [his] arguments
on the pleadings, 'bolstered by such affidavits and other
written materials as [he] can otherwise obtain.'" *Urban Inst.
v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting
*Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)).

When determining whether personal jurisdiction exists over
a defendant, the court need not treat all of a plaintiff's
allegations as true.  Instead, the court "may receive and weigh
affidavits and any other relevant matter to assist it in
determining the jurisdictional facts." *Buesgens v. Brown*, 567
F. Supp. 2d 26, 31 (D.D.C. 2008) (internal quotation omitted).
Any factual discrepancies with regard to the existence of
personal jurisdiction, however, must be resolved in favor of the
plaintiff. *See Crane*, 894 F.2d at 456.  Although complaints
filed by *pro se* plaintiffs are to be liberally construed, *see
Erickson v. Pardus*, 551 U.S. 89, 94 (2007), *pro se* plaintiffs
"are not freed from the requirement to plead an adequate
jurisdictional basis for their claims," *Kurtz v. United States*,
779 F. Supp. 2d 50, 51 (D.D.C. 2011) (internal quotation
omitted).

## B.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  "'[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint[,]'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson*, 551 U.S. at 94), and grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.*  In addition, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

"'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Even a *pro se* complainant, however, must plead "'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton*, 567 F.3d at 681-82 (quoting *Iqbal*, 129 S. Ct. at 1950).

## III. ANALYSIS

### A.   FCRA Claims

Mazza claims that defendants VZDC and AFNI violated the FCRA, 15 U.S.C. § 1681 *et seq.*, by reporting to consumer reporting agencies ("CRAs") false, erroneous, and negative credit information that adversely affected him.  Compl. ¶¶ 51-55.  Defendants argue that no private right of action exists under the FCRA.  Defendants additionally argue that Mazza has failed to state a claim upon which relief can be granted under the FCRA.  *See* Defs.' Mem. of Points and Authorities in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 4-5, 7.

Section 1681s-2 of the FCRA sets forth "[r]esponsibilities of furnishers of information[3] to consumer reporting agencies,"

---

[3] "The most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." *Gorman v. Wolpoff & Abramson, LLP*, 584

delineating two categories of responsibilities.  Subsection (a)

details the duty "to provide accurate information," and states

that a furnisher of information "shall not furnish any

information relating to a consumer to any [CRA] if the person

knows or has reasonable cause to believe that the information is

inaccurate."  15 U.S.C. § 1681s-2(a)(1)(A).  In addition, a

furnisher of information shall not furnish such information to a

CRA if it "has been notified by the consumer . . . that specific

information is inaccurate . . . and the information is, in fact,

inaccurate."  *Id.* § 1681s-2(a)(1)(B).  Subsection (b) provides

that once a furnisher of information receives notice of "a

dispute with regard to the completeness or accuracy of any

information provided by a person to a [CRA]," it must conduct an

investigation into the disputed information and report the

results of that investigation to the CRA.  *Id.* § 1681s-2(b)(1).

The FCRA imposes civil liability on any person who

willfully or negligently fails to comply with any of the Act's

requirements.  *See* 15 U.S.C. § 1681n (creating civil liability

for willful noncompliance with any portion of the Act); *id.* §

1681o (creating civil liability for negligent noncompliance with

any portion of the Act).  The Act, however, expressly excludes

---

F.3d 1147, 1154 n.7 (9th Cir. 2009) (citing H.R. Rep. No. 108-
263, at 24 (2003)).  The Court thus construes plaintiff's
Complaint to identify both VZDC and AFNI as furnishers of
information.

Section 1681s-2(a) from the purview of Sections 1681n and 1681o, instead limiting enforcement of Subsection (a) exclusively to the federal and state agencies and officials identified in Section 1681s. *See id.* §§ 1681s-2(c), (d). Section 1681s-2(a) thus does not provide for a private right of action, that is, enforcement by an individual. *See Edmond v. Am. Educ. Servs.*, No. 10-0578 (JDB), 2010 U.S. Dist. LEXIS 114834, *9-10 (D.D.C. Oct. 28, 2010); *see also Haynes v. Navy Fed. Credit Union*, No. 11-00614 (CKK), 2011 U.S. Dist. LEXIS 135235, *22-23 (D.D.C. Nov. 23, 2011). Therefore, Mazza cannot bring a claim against defendants for a violation of Section 1681s-2(a).

However, as courts in this District and multiple Circuits have held, the FCRA does provide a private right of action for violations under Section 1681s-2(b). *See Haynes*, 2011 U.S. Dist. LEXIS 135235, at *24 (citing *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011); *Gorman*, 584 F.3d at 1154); *see also Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 36 (1st Cir. 2010); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 149 (4th Cir. 2008); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 826-27 (7th Cir. 2005).[4] A plaintiff

---

[4] Defendants argue that the Court should follow *Carney v. Experian Information Solutions, Inc.*, 57 F. Supp. 2d 496 (W.D. Tenn. 1999), which held that the duties described in Section 1681s-2(b) "appear to exist solely for the benefit of consumer reporting agencies," and a furnisher of information's duty under § 1681s-2(b) "is owed only to the consumer reporting agency not

cannot establish a claim under this section, however, merely by showing that he notified the furnisher of information of the dispute.  Rather, to succeed on a claim under Section 1681s-2(b), Mazza must show that (1) he notified the CRA directly regarding the disputed credit information, and (2) that the CRA in turn provided notice to the furnisher of Mazza's credit information, which was then obligated to conduct an investigation into the dispute.  *See* 15 U.S.C. § 1681i; *see also Pouth Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 203-04 (D.D.C. 2009); *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639-40 (5th Cir. 2002) (holding that plaintiff must show that defendants received notice from a CRA, as opposed to plaintiff alone, that the credit information was disputed); *Gorman*, 584 F.3d at 1154.

In his Complaint, Mazza alleges that he "made multiple inquiries of Defendants Verizon Communications, [VZDC], Verizon

---

to the consumer."  *Id.* at 502.  As such, the court in *Carney* concluded that a consumer cannot state a claim under § 1681s-2(b).  *Id.*  The Court finds this conclusion unpersuasive and contrary to "the vast majority of courts to have considered this issue [and held] that a plain reading of the FCRA's text indicates that a private cause of action exists for individuals seeking remedies for furnishers' violations of § 1681s-2(b)." *Chiang*, 595 F.3d at 36 (collecting cases).  Defendants also argue that the Court should follow the opinion of another judge in this District in *Edmond v. American Education Services*, No. 10-0578, 2010 U.S. Dist. LEXIS 114834 (D.D.C. Oct. 28, 2010) (Bates, J.).  However, that opinion addressed only Subsection (a) of the FCRA, not Subsection (b), and it is thus not relevant to the Court's analysis here.

Wireless, and [AFNI]—both verbally and in writing, denying owing monies, requesting inquiry into the amounts remitted and cashed by Defendant Verizon Wireless, and demanding the reversal of negative credit reporting." Compl. ¶ 28.  Mazza fails to allege, however, that he notified any CRA of the dispute, that the CRA in turn notified defendants, so as to trigger any duty under Section 1681s-2(b), and that defendants either failed to undertake the required investigation or did so negligently or willfully. *See Pouth Phrasavang*, 656 F. Supp. at 203-04.  In Mazza's Opposition, however, he includes the following new allegations: "Plaintiff alleges: i) CRA notification of a dispute; ii) notification to Defendants; and, iii) actively seeks discovery in the matter," to determine whether there were actual inaccuracies that defendants' reasonable investigation would have been able to discover.  Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 20.  Moreover, in the context of his FDCPA claims, Mazza asserts that he "disputed the debt with all Credit Bureaus and all Defendants.  The Credit Bureaus indicated that the dispute had been researched and affirmed by the Creditors, AFNI [] and [VZDC]." *Id.* at 22-23.  These allegations relate to Mazza's claims under the FCRA.  Because Mazza is proceeding *pro se*, the Court properly construes his Complaint to include the arguments raised in his Opposition. *See Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir.

12

1999) (holding that the district court abused its discretion in failing to consider a *pro se* plaintiff's complaint in light of his response to the defendant's motion to dismiss); *Fennell v. AARP*, 770 F. Supp. 2d 118, 121, 125 (D.D.C. 2011).  Having read all of Mazza's filings together, the Court finds that Mazza has pled sufficient facts to set forth a claim for relief under Section 1681s-2(b).

Therefore, the Court hereby **DENIES** defendants' Motion to Dismiss as to claims raised under Section 1681s-2(b).

### B.   FDCPA Claims

Mazza claims that defendants VZDC and AFNI violated the FDCPA, 15 U.S.C. § 1692, by initiating "a pattern of abusive collection strategies [] against [him], including repeated telephone calls and written requests for payment, after [he] had affirmatively denied owing the monies claimed and furnished proof of payment."  Compl. ¶¶ 57-60.

The FDCPA protects (1) consumers (2) who have been subjected to abusive, deceptive or unfair debt collection practices (3) by a debt collector (4) in an attempt to collect a debt.  *Muldrow v. EMC Mortg. Corp.*, 657 F. Supp. 2d 171, 174-75 (D.D.C. 2009) (citing *Piper v. Portnoff*, 396 F.3d 227, 232 (3d Cir. 2005)); *see also* 15 U.S.C. § 1692(a).  At issue in the instant action are Sections 1692d and 1692e of the FDCPA. Section 1692d of the FDCPA provides that a debt collector "may

13

not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Such conduct includes, without limitation:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
(3) The publication of a list of consumers who allegedly refuse to pay debts . . . .
(4) The advertisement for sale of any debt to coerce payment of the debt.
(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
(6) Except as provided in [15 U.S.C. § 1692b], the placement of telephone calls without meaningful disclosure of the caller's identity.

*Id.* In addition, Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. Such conduct includes "the false representation of . . . the character, amount, or legal status of any debt." *Id.* § 1692e(2). The test for determining potential violations of the FDCPA is an objective standard based on the "least sophisticated consumer." *Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 236 (2d Cir. 1998).

In their Motion to Dismiss, defendants argue that Mazza's claims under the FDCPA are time-barred, that VZDC's collection

14

actions are not subject to the FDCPA, and alternatively, that
Mazza has failed to state a claim for violation of the FDCPA.
The Court addresses each argument in turn.

### 1. Timeliness of Plaintiff's Claims under the FDCPA

The FDCPA provides that an action to enforce liability
under the Act may be brought "within one year from the date on
which the violation occurs."  15 U.S.C. § 1692k(d).  Defendants
argue that, although Mazza's Complaint "does not state
concretely the dates on which AFNI's and VZDC's alleged
violations of the FDCPA occurred," it appears that he "last
communicated with AFNI '[o]n or about June 2008 through June
2009' and with VZDC [in] 2007."  Defs.' Mem. at 6 (quoting
Compl. ¶¶ 23-24).  Thus, defendants argue that because Mazza did
not file his Complaint until April 13, 2011, his claims under
the FDCPA are time-barred.  However, a plain reading of the
Complaint belies defendants' argument.  Construing the Complaint
in the light most favorable to Mazza, the Court finds that Mazza
has alleged violations of the FDCPA occurring in June 2010 and
for some time thereafter, well within one year of the filing of
the Complaint.  *See* Compl. ¶¶ 25-34; *see also* Pl.'s Opp'n at 22-
23.  Specifically, Mazza claims that, "[o]n or about June 2010,"
he received a "Settlement Offer" from AFNI, which stated that
AFNI would accept payment of half of the amount it alleged
plaintiff owed to its client, VZDC.  Compl. ¶ 25.  Mazza alleges

15

that subsequently, he made multiple inquiries of defendants AFNI
and VZDC denying the amount owed, requesting inquiry into the
dispute, and demanding the reversal of negative credit
reporting, to no avail.  Compl. ¶¶ 28-34.  In addition, Mazza
alleges that defendant AFNI "continued to make demands for
payment."  Compl. ¶ 31.  Therefore, the Court finds that Mazza's
FDCPA claims are not time-barred.[5]

## 2.   Exemption of VZDC from the FDCPA

Defendants argue that VZDC's collection actions are not
subject to the FDCPA because a creditor's actions to collect its
own debts are specifically exempted.  Defs.' Mem. at 6 (citing
15 U.S.C. § 1692a; *Sterling Mirror of Maryland, Inc. v. Gordon*,
619 A.2d 64 (D.C. 1993)).

-----

[5] In their Reply, defendants argue that "notice to Plaintiff
of the debt being reported to a [CRA] is not, nor is it alleged
by Plaintiff in his Complaint to be, a violation of the FDCPA."
Defs.' Reply at 4-5 (citing 15 U.S.C. § 1692d).  However, the
Complaint alleges actions taken by the defendants after June
2010, other than notice of the debt being reported to a CRA.
Moreover, the Court is not to dismiss a case on statute of
limitations grounds unless it is clear from the Complaint that
it is conclusively time-barred.  *See Firestone v. Firestone*, 76
F.3d 1205, 1209 (D.C. Cir. 1996); *Turner v. Afro-American
Newspaper Co.*, 572 F. Supp. 2d 71, 72 (D.D.C. 2008) ("A court
should grant a pre-discovery motion to dismiss on limitations
grounds only if the complaint on its face is conclusively time-
barred, and the parties do not dispute when the limitations
period began." (internal citation and quotation marks omitted)).
Here, it is not clear from the Complaint that Mazza could allege
no violations of the FDCPA based upon the conduct he alleges
occurred during the summer of 2010.  The Court therefore cannot
find that the FDCPA claims are conclusively time-barred.

The FDCPA defines a "debt collector" as:

[A]ny person . . . in any business the principal
purpose of which is the collection of any debts, or
who regularly collects or attempts to collect,
directly or indirectly, debts owed or due or asserted
to be owed or due another. . . . [T]he term includes
any creditor who, in the process of collecting his own
debts, uses any name other than his own which would
indicate that a third person is collecting or
attempting to collect such debts.

15 U.S.C. § 1692a(6).  However, the term does not include "any

officer or employee of a creditor while, in the name of the

creditor, collecting debts for such creditor." *Id*. §

1692a(6)(A).  The Act defines a creditor as "any person who

offers or extends credit creating a debt or to whom a debt is

owed . . . ." *Id*. § 1692a(4).  Thus, the FDCPA is not

applicable to creditors who are in the business of collecting

their own debts. *See Gore v. First Union Nat'l Bank*, No. 01-

2166 (CKK), 2002 U.S. Dist. LEXIS 14396, *5-7 (D.D.C. July 29,

2002); *Sterling*, 619 A.2d at 66 ("[Section 1692a(6)] does not

include actions of a creditor taken in an effort to collect its

own debts directly from its debtors.").  The Complaint does not

allege—nor could it—that the principal purpose of VZDC's

business is debt collection, nor does it allege that VZDC used

any other name and/or alias in an attempt to collect the debts

in question.  Additionally, Mazza concedes that VZDC was

attempting to collect a debt owed to it as a creditor.  *See* Pl.'s Opp'n at 23.[6]

Accordingly, the Court will **GRANT** defendants' Motion to Dismiss the FDCPA claims as to VZDC.

### 3.   Failure to State a Claim for a Violation of the FDCPA

Finally, defendants argue that Mazza has failed to state a claim for violation of the FDCPA pursuant to Federal Rule of Civil Procedure 12(b)(6).[7]

As noted above, Section 1692d of the FDCPA provides that a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Section 1692e prohibits a debt collector from using "any

---

[6] As discussed below, in his Opposition, Mazza characterizes his FDCPA claim as one for "false representation of the character, amount, or legal status of any debt."  Pl.'s Opp'n at 22 (citing 15 U.S.C. § 1692e(2)(A)).  Mazza goes on to argue that, "[p]rior to June 2010, Defendant [VZDC] may have successfully availed itself of the protections afforded under FDCPA regarding creditors taking efforts to collect their own debts directly from their debtors.  But since 2010, long after the alleged debt had been sold or transferred to AFNI, Inc., [VZDC] continued to make 'false representations regarding the character and amount' owed by the Plaintiff."  Pl.'s Opp'n at 23 (internal citation omitted).  This argument is misplaced.  Section 1692e expressly applies only to "debt collectors," and therefore does not apply to VZDC.

[7] Because the Court concludes above that plaintiff cannot bring his FDCPA claims against VZDC, the Court analyzes whether or not plaintiff has stated a claim for a violation of the FDCPA against defendant AFNI only.

false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e.

Mazza alleges that defendant AFNI initiated "a pattern of abusive collection strategies against [him], including repeated telephone calls and written requests for payment, after [he] had affirmatively denied owing the monies claimed and furnished proof of payment." Compl. ¶ 59. For example, Mazza alleges that from about June 2008 to June 2009, he received several requests for payment—both verbally and in writing—from AFNI for a past due amount owed to AFNI's client, VZDC. Compl. ¶ 24. In addition, Mazza alleges that he received from AFNI a "Settlement Offer" agreeing to accept payment of half of the "current amount due." Compl. ¶ 25 (citation omitted). Finally, Mazza alleges that he made multiple inquiries of AFNI requesting inquiry into the dispute and demanding reversal of the negative credit reporting. Although AFNI pledged to investigate the dispute, it "continue[d] to make demands for payment." Compl. ¶¶ 28, 31. Construed liberally, these allegations are sufficient to state a claim for violation of Section 1692d.[8]

---

[8] Indeed, defendants offer no arguments to dispute the sufficiency of Mazza's allegations. Instead, defendants merely set forth the standard for a motion to dismiss pursuant to Rule 12(b)(6) and state conclusively that "[w]hen viewed against this standard Plaintiff's . . . FDCPA claims are properly dismissed for failure to state a claim." Defs.' Mem. at 7. Defendants do not address this argument whatsoever in their Reply.

In his Opposition, Mazza additionally argues that his claim regarding defendants' FDCPA violations "is the prohibition in § 1692e against 'any' false or deceptive representations or means made in connection with the collection of a debt [including] . . . the 'false representation of the character, amount, or legal status of any debt.'"  Pl.'s Opp'n at 22 (quoting 15 U.S.C. § 1692e(2)(A)).  Even construing Mazza's filings liberally, however, because Mazza does not identify any false or misleading statements by AFNI, the Court cannot discern a basis for a claim under Section 1692e.

Accordingly, the Court will **DENY** defendants' Motion to Dismiss with respect to Mazza's claims under Section 1692d.[9]

C.   **Common Law Claims**

In this Circuit, "[c]omplaints may [] be dismissed, *sua sponte* . . . under Rule 12(b)(6) whenever the plaintiff cannot possibly win relief."  *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) (internal citation and quotation marks omitted); *see*

---

[9] Defendants argue that the Complaint must also be dismissed for lack of subject-matter jurisdiction because there is not complete diversity among the parties.  Defs.' Mem. at 7-8.  This argument presupposes that the Court would conclude that Mazza had failed to state a claim for relief under the FCRA and the FDCPA.  However, because the Court finds that Mazza can maintain federal claims against defendants under both the FCRA and the FDCPA, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over any common law claims in the Complaint that form part of the same case or controversy.  *See* 28 U.S.C. § 1367(a).  Therefore, the Court need not determine whether it would alternatively have diversity jurisdiction over this action.

*also Moore v. Motz*, 437 F. Supp. 2d 88, 94 (D.D.C. 2006)

(dismissing *sua sponte* the plaintiff's claim for "failure to

fulfill a campaign promise," as such a cause of action does not

exist).  Here, Mazza has alleged two common law claims for

"intentional tort" and "ongoing pattern and practice of bad

faith dealing."  Compl. ¶¶ 38-49.  Defendants inexplicably do

not dispute the merits of Mazza's common law claims.  However,

finding itself unable to discern any basis for a claim of

"intentional tort" or an "ongoing pattern and practice of bad

faith dealing," the Court will exercise its discretion to

dismiss these claims, *sua sponte*, pursuant to Rule 12(b)(6).

Indeed, Mazza has not pled a sufficient factual basis to enable

the Court to infer "more than the mere possibility of

misconduct."  *Atherton*, 567 F.3d at 682 (citing *Iqbal*, 129 S.

Ct. at 1950).  Accordingly, the common law claims contained in

Counts I and II of the Complaint are hereby **DISMISSED WITHOUT

PREJUDICE.**

**D.   Personal Jurisdiction Over Verizon Communications**

Finally, defendants argue that the Court should dismiss

defendant Verizon Communications because Mazza has not alleged

any basis for personal jurisdiction over Verizon Communications.

*See* Defs.' Mem. at 8-9.  According to defendants, Verizon

Communications has no contacts in the District of Columbia:

"[a]t all times pertinent to Plaintiff's suit, Verizon

21

Communications did not and currently does not operate or do business in the District of Columbia.  Specifically, Verizon Communications is not now, nor has [it] ever been engaged in the provision of telecommunications services in the District of Columbia, nor the collection of debts associated with such services."  *Id.; see also* Defs.' Reply, Ex. 1, Motion of Defendant Verizon Communications Inc. to Set Aside Default and Dismiss Statement of Claim, Ex. C, Declaration of Alexander Shekhter ("Shekhter Decl."), at ¶ 6 ("Verizon Communications Inc. does not have offices in the District of Columbia, does not own or lease any real property in the District of Columbia, and does not advertise, solicit or conduct business in the District of Columbia.").

As noted above, it is plaintiff's burden to make a *prima facie* showing of personal jurisdiction over the defendants.  *See First Chi. Int'l*, 836 F.2d at 1378.  In the D.C. Circuit, personal jurisdiction "must be determined by reference to District of Columbia law."  *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  To determine whether the court may exercise so called "specific" jurisdiction over a non-resident defendant,[10] the court engages in a two-part inquiry.  First, the

---

[10] It is undisputed that Verizon Communications is a Delaware company with its principal place of business in New York.  Compl. ¶ 6.  Therefore, Verizon Communications does not fall within the scope of D.C. Code Section 13-422.  *See* D.C.

court must determine whether there is a basis for personal

jurisdiction under the District of Columbia's long-arm statute,

D.C. Code § 13-423.  *See GTE New Media Servs., Inc. v. BellSouth*

*Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  The long-arm

statute provides that a District of Columbia court may exercise

jurisdiction over any person who, acting directly or through an

agent,[11] engages in the following conduct:

> (1) transacting any business in the District of
>     Columbia;
> (2) contracting to supply services in the District of
>     Columbia;
> (3) causing tortious injury in the District of
>     Columbia by an act or omission in the District of
>     Columbia;
> (4) causing tortious injury in the District of
>     Columbia by an act or omission outside the
>     District of Columbia if he regularly does or
>     solicits business, engages in any other
>     persistent course of conduct, or derives
>     substantial revenue from goods used or consumed,
>     or services rendered, in the District of
>     Columbia;
> (5) having an interest in, using, or possessing real
>     property in the District of Columbia[.]

D.C. Code § 13-423(a).  Where jurisdiction is based solely on

D.C. Code Section 13-423, "only a claim for relief *arising from*

*acts enumerated in this* section may be asserted against [the

---

Code § 13-422 ("A District of Columbia court may exercise
personal jurisdiction over a person domiciled in, organized
under the laws of, or maintaining his or its principal place of
business in, the District of Columbia as to any claim for
relief.").

[11] Mazza nowhere alleges that either VZDC or Verizon
Wireless is an agent of Verizon Communications.

defendants]."  D.C. Code § 13-423(b) (emphasis added).  Second,
a court must determine whether the exercise of personal
jurisdiction comports with the requirements of due process.  *See*
*GTE*, 199 F.3d at 1347.  This portion of the analysis turns on
whether a defendant's "minimum contacts" with the District of
Columbia establish that "the maintenance of the suit does not
offend traditional notions of fair play and substantial
justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316
(1945) (internal citation and quotation marks omitted).

The Court finds that Mazza has not met his burden of
establishing a basis for specific jurisdiction under any of the
relevant categories set forth in the long-arm statute.  Mazza
alleges that Verizon Communications "is responsible for
establishing revenue targets, operational goals and guidelines,
customer acquisition and support strategies for [defendants VZDC
and Verizon Wireless] . . . [and] is responsible for the
infrastructure and client databases for [defendants VZDC and
Verizon Wireless]."  Compl. ¶¶ 7-10.  With respect to the
instant claims, Mazza states only that he made multiple
inquiries of all of the defendants, including Verizon
Communications, in an effort to dispute the charges owed and
demand reversal of any negative credit reporting.  Compl. ¶ 28.
According to Mazza, defendant Verizon Communications
"continually denied culpability," but later "pledged to address

the matter promptly" and did not resolve it.  Compl. ¶¶ 32-33, 35.  The Court finds that these allegations do not demonstrate that Verizon Communications directed any activity into the District of Columbia related to Mazza's claims.  Because the Court finds that Mazza cannot establish specific jurisdiction under the long-arm statute, the Court need not reach the question of whether exercising jurisdiction over Verizon Communications would comport with due process.

In his Opposition, Mazza argues that, because Verizon Communications is the holding company for VZDC and Verizon Wireless, which do not contest jurisdiction, the business contacts of VZDC and Verizon Wireless should be imputed to Verizon Communications in order to subject it to jurisdiction.[12] Pl.'s Opp'n at 11-13.  However, because Mazza has not met his burden of demonstrating that Verizon Communications is the alter ego of either VZDC or Verizon Wireless, the Court cannot exercise personal jurisdiction over Verizon Communications on that basis either.

Ordinarily, a corporation's contacts with a forum may not be attributed to affiliated corporations.  *See Material Supply*

---

[12] Mazza also contends that Verizon Communications is subject to personal jurisdiction because it is a party to lawsuits before this Court.  *See* Pl.'s Opp'n at 11.  Mazza offers no support for this assertion and has not demonstrated that it is a proper basis for this Court's exercise of personal jurisdiction over Verizon Communications.

*Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 19 (D.D.C. 1999). An exception exists, however, "where affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction; in that case the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 7 (D.D.C. 2003) (internal quotation omitted). Courts will impute personal jurisdiction under an alter ego theory in cases where the parent company "so dominated the [subsidiary] corporation as to negate its separate personality." *Material Supply*, 62 F. Supp. 2d at 20 (internal quotation omitted). The alter ego test thus analyzes "(1) whether there is such unity of interest and ownership that the separate personalities of [the companies] no longer exist; and (2) whether an inequitable result will follow if the court treats [the subsidiary's] allegedly wrongful acts as those of [the subsidiary] alone." *Id.* (quoting *Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 786 (D.C. Cir. 1998)). The first prong requires a showing that Verizon Communications' control over VZDC and/or Verizon Wireless is "active and substantial." *Id.* (citation omitted). To assess whether there is a unity of interest and ownership, the court may consider the following factors: (1) the nature of the corporate ownership and control; (2) failure to maintain corporate minutes or records; (3)

failure to maintain corporate formalities; (4) commingling of funds and assets; (5) diversion of one corporation's funds to the other's uses; and (6) use of the same office or business location.  *See id.* (citing *Labadie Coal Co. v. Black*, 672 F.2d 92, 97-99 (D.C. Cir. 1982)).  Disregarding the separate identities of a corporate parent and its subsidiary is, however, a "rare exception grounded in equity considerations," *Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 770 F. Supp. 2d 24, 28 (D.D.C. 2011), and is only to be applied when "adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice," *Diamond Chem.*, 268 F. Supp. 2d at 9 (internal quotation omitted); *see also In re Baan Co. Secs. Litig.*, 245 F. Supp. 2d 117, 129 (D.D.C. 2003).

In his Opposition, Mazza states only that, "given Verizon Communications' relationship with its subsidiaries/investments in [the] District of Columbia[,] this Court should find that Plaintiff has clearly proffered evidence beyond the requirements of a prima facie showing of personal jurisdiction over Verizon Communications." Pl.'s Opp'n at 13.  These mere conclusory statements, without more, do not demonstrate that Verizon Communications exercises "active and substantial control" over the other Verizon defendants.  Defendants assert, on the other hand, that Verizon Communications "is separate and distinct from other Verizon entities and maintains all corporate formalities."

Shekhter Decl. at ¶ 4.  Mazza offers no evidence to demonstrate
that Verizon Communications is the alter ego of either VZDC or
Verizon Wireless.  Therefore, the Court finds that Mazza has not
met his burden of demonstrating that the Court may exercise
personal jurisdiction over Verizon Communications.[13]

Accordingly, the Court hereby **GRANTS** defendants' Motion to
Dismiss Verizon Communications.

---

[13] In addition to "specific," case-linked jurisdiction, a
court may also exercise "general" or all-purpose jurisdiction
over a non-resident defendant.  *Goodyear Dunlop Tires Operations
v. Brown*, --- U.S. ----, 131 S. Ct. 2846, 2851, 2853 (2011).
General jurisdiction permits a court to hear any claims against
a defendant when its contacts with the forum are "so 'continuous
and systematic' as to render them essentially at home in the
forum."  *Id.* at 2851 (quoting *International Shoe*, 326 U.S. at
318); *see also FC Inv. Group LC v. IFX Mkts., Ltd.*, 529 F.3d
1087, 1091-92 (D.C. Cir. 2008).  Under District of Columbia law,
a court may exercise "general" personal jurisdiction over a non-
resident corporate defendant when it is "doing business in the
District."  D.C. Code § 13-334(a); *see also Gorman v. Ameritrade
Holding Corp.*, 293 F.3d 506, 509-10 (D.C. Cir. 2002).  Here,
plaintiff merely alleges that all of the defendants "are []
corporations conducting business within the District of Columbia
or have significant commercial ties to Washington, DC."  Compl.
¶ 2.  However, as noted above, Verizon Communications has
proffered evidence that it does not conduct business in the
District of Columbia or have any commercial ties here.  *See
generally* Defs.' Mem. at 8-9; Shekhter Decl. ¶¶ 5-6.  Moreover,
as discussed above, Mazza cannot show that Verizon
Communications has availed itself of this jurisdiction based on
an alter ego theory.  Mazza has thus not met his burden of
demonstrating that Verizon Communications has "continuous and
systematic" business contacts with this forum.  Accordingly, the
Court concludes that it cannot assert general personal
jurisdiction over defendant Verizon Communications.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** defendants' Motion to Dismiss.  Specifically, the Court will **GRANT** defendants' Motion to Dismiss the FDCPA claims as to VZDC and will **GRANT** defendants' Motion to Dismiss as to Verizon Communications.  In addition, the common law claims contained in Counts I and II of the Complaint are *sua sponte* **DISMISSED WITHOUT PREJUDICE.**  In all other respects, the Motion to Dismiss is **DENIED**.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**     **Emmet G. Sullivan**
          **United States District Court Judge**
          **March 29, 2012**